IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Tiffany Williams, | ) | C/A No. 0:09-1971-TLW-PJG |
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue,<br>Commissioner of Social Security, | ) | |
| Defendant. | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Tiffany Williams ("Williams"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On June 8, 2004, Williams applied for SSI and DIB. Williams's applications were denied initially and on reconsideration and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on October 2, 2007 at which Williams appeared and testified and was represented by Paul T. McChesney, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision dated November 5, 2007 finding that Williams was not disabled. (Tr. 13-25.)

Williams was 36 years old at the time of the ALJ's decision. She has an eighth grade education and has past relevant work experience as a housekeeper, sandwich maker, and cashier. (Tr. 93, 98, 110.) Williams alleges disability since January 1, 2001 due to bipolar disorder and schizophrenia. (Tr. 92.)

The ALJ made the following findings and conclusions:

1. The claimant met the insured status requirements of the Social Security Act through June 30, 2006.

2. The claimant has not engaged in substantial gainful activity since January 1, 2001, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: an affective disorder, an anxiety-related disorder, and a history of polysubstance dependence (20 CFR 404.1520(c) and 416.920(c).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
   \* \* \*
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but is limited to simple, unskilled work with no sustained interactions with the public.
   \* \* \*
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
   \* \* \*
7. The claimant was born on August 1, 1971, and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).
    \* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2001 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 18-25.)

Williams filed a request for Appeals Council review and submitted additional evidence in support of her claim. On May 28, 2009, the Appeals Council denied Williams's request for review and concluded that none of the additional evidence provided a basis for changing the ALJ's decision, making the decision of the ALJ the final action of the Commissioner. (Tr. 6-9.) Williams filed this action on July 23, 2009.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform [her] past relevant work; and

(5) whether the claimant's impairments prevent [her] from doing any other kind of work.

Page 3 of 13
PJG

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence,

make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775 (4th Cir. 1973).

**ISSUES**

Williams raises the following issues for this judicial review:

I. Did the ALJ perform the analysis of the treating physician opinions required by 20 CFR § 404.1527(d)(1)-(6), SSR 96-2p and SSR 96-5p?

II. Did the ALJ adequately explain his findings regarding Williams' residual functional capacity, as required by Social Security Ruling 96-8p?

(Pl.'s Br. at 4, ECF No. 8 at 4.)

**DISCUSSION**

**A. Treating Physician**

Williams first argues that the ALJ erred in failing to give controlling weight to the opinion of Dr. Jon Kazaglis, one of Williams's treating physicians. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "If [the Commissioner] finds that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [the Commissioner] will give it controlling weight." Id.; cf. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*) ("Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not *require* that the testimony be given controlling weight.") (emphasis added). If controlling weight is not accorded, a treating physician's opinion is

evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

In a statement dated October 1, 2007, Dr. Kazaglis indicated that he treated Williams for her psychological condition from 2002 to 2005. Dr. Kazaglis stated that Williams "has an agitated depression and anger control problems" and opined that her depression was fairly severe and that she had significant problems with interpersonal relationships. (Tr. 493.) After stating that Williams stopped seeing him in 2005, Dr. Kazaglis opined that "[w]hile she was seeing me, she most probably would have had trouble maintaining interpersonal relationships with supervisors and coworkers; and these problems seem to be long term lifetime problems." (Id.)

The ALJ considered this opinion and gave it "no significant or controlling weight" based on the fact that (1) it was rendered two years after treatment ended; (2) during the time period Dr. Kazaglis treated Williams it was evident that Williams remained under the influence of polysubstance abuse; and (3) the opinion lacked specific work-related limitations. (Tr. 23.) Williams argues that this was error and attacks each of the reasons provided by the ALJ.

Williams contends that Dr. Kagalis's opinion contained specific limitations; therefore, the ALJ erred in rejecting it on that basis. As stated above, Dr. Kazaglis opined that Williams's depression was "fairly severe;" that she had significant problems with interpersonal relationships; that during the time he treated her, she "most probably would have had trouble maintaining

interpersonal relationships with supervisors and co-workers;" and that her problems seemed to be lifelong in nature. (Tr. 493). However, contrary to Williams's argument, the court cannot say that the ALJ erred in finding that Dr. Kazaglis's opinion that, while he was treating Williams, "she *most probably* would have had trouble maintaining interpersonal relationships with supervisors and coworkers" was insufficient to constitute a specific work-related limitation. See Bean v. Chater, 77 F.3d 1210, 1213 (10th Cir. 1995) (approving an ALJ's rejection of physician's opinion that claimant had "severe" limitations in standing, walking, etc., in part, because the opinion was generic); Sullivan v. U.S. Comm'r Soc. Sec. Admin., No. 07-cv-1973, 2009 WL 854650 (W.D. La. Mar. 26, 2009) (unpublished) (finding that the ALJ did not err in discounting a treating physician's "one-paragraph letter that was not specific as to any mental limitations"); see also Charles v. Barnhart, 375 F.3d 777, 783 (8th Cir. 2004) ("A treating physician's opinion deserves no greater respect than any other physician's opinion when the treating physician's opinion consists of nothing more than vague, conclusory statements."). Moreover, the ALJ found that Williams had several severe impairments including an affective and an anxiety-related disorder, which is not inconsistent with Dr. Kazaglis's statement that Williams's depression was "fairly severe." The ALJ further restricted Williams to simple, unskilled work[1] with no sustained interactions with the public, which is not inconsistent with Dr. Kazaglis's statement that she had significant problems with interpersonal relationships.

Further, Williams has not shown that the ALJ's other reasons for rejecting Dr. Kazaglis's opinion were erroneous. The ALJ also rejected Dr. Kazaglis's opinion because Dr. Kazaglis rendered his opinion two years after he stopped treating Williams and the ALJ found that she remained under the influence of polysubstance abuse during that treatment period. (Tr. 23.) Dr.

---

[1] "[T]he primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people)." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(i).

Page 7 of 13
PJG

Kazaglis treated Plaintiff from 2002 to 2005 and his statement is from 2007. (Tr. 493.) The ALJ noted that the medical evidence established that Williams had a history of alcohol and cocaine abuse. The ALJ also found that "[w]hile the medical evidence of record shows that the claimant has had a history of depression and anxiety, evidence also shows that she has improved with medication and after ceasing polysubstance abuse." (Tr. 22.) There is evidence in the record that Williams continued to abuse substances at least through October 2004. (See Tr. 381.) Thus, as argued by the Commissioner, the ALJ could reasonably question Dr. Kazaglis's opinion that Williams's condition was permanent because Williams's condition changed after he treated her, since she ultimately discontinued her substance abuse and her condition improved after this time.[2] Based on this fact, coupled with the two-year delay between his treatment and his opinion, Williams has not shown that the ALJ erred in discounting Dr. Kazaglis's opinion on that basis. See Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (finding that the record supported the ALJ's decision to give a treating physician's opinion little weight, in part because it was communicated one year after his last treatment of the plaintiff). Therefore, the court cannot say that the ALJ's decision to reject Dr. Kazaglis's opinion on these bases is not supported by substantial evidence.

---

[2] Williams argues that the ALJ erred in using the fact that Williams was under the influence of polysubstance abuse during the time he treated her as a basis for rejecting Dr. Kazaglis's opinion, relying on two social security regulations, 20 C.F.R. § 404.1535 and § 416.935. These regulations state, "If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535, 416.935. Williams has failed to demonstrate that these regulations would apply in this context, especially considering the fact that the ALJ did not find Williams disabled even with her prior polysubstance abuse and the fact that he found that Williams had improved after discontinuing the abuse.

B.  **Williams's Residual Functional Capacity**

1.  **SSR 96-8p**

Williams argues that the ALJ's residual functional capacity ("RFC") determination fails to include certain limitations indicated by the ALJ in the decision and fails to consider the impact of Williams's mental impairments as required by SSR 96-8p. SSR 96-8p requires RFC to be "expressed in terms of work-related functions." "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." Id. In the decision, the ALJ found that Williams retained "the residual functional capacity to perform a full range of work at all exertional levels but is limited to simple, unskilled work with no sustained interactions with the public." (Tr. 19).

The Commissioner appears to concede that the ALJ's decision fails to contain the specificity required by SSR 96-8p; however, the Commissioner argues that this was harmless error. A review of the transcript of Williams's hearing reveals that the ALJ presented the vocational expert, Mr. Weldon, with several hypothetical questions. The first hypothetical question set forth specific mental limitations in accordance with SSR 96-8p. Specifically, the ALJ, relying on one of the most restrictive consultative examination reports, asked Weldon to assume Williams had moderate limitations in concentrating for extended periods of time but could concentrate adequately on simple tasks for at least two hours at a time, moderate limitations in interacting with the public, moderate limitations in setting realistic goals and planning independently, and would perform best in a situation that did not require ongoing interaction with the public. (Tr. 638-39.) Weldon responded that there were jobs in significant numbers that Williams could perform, such as a housekeeper and

a kitchen helper at the unskilled, medium exertional level. Weldon also testified that there would be additional jobs at the light exertional level. In the decision, the ALJ identified these jobs as available jobs that Williams could perform with her RFC. Therefore, even assuming that the explanation of the RFC determination in the ALJ's written decision did not comply with SSR 96-8p, the court finds that Williams cannot demonstrate prejudice and that any error is harmless. See Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.") (citations and internal quotation marks omitted); see also Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that the principle of harmless error applies to Social Security disability cases).

2. **Combined Effects**

Williams also argues that the ALJ failed to consider the combined effects of all of her impairments in determining her RFC. Specifically, Williams argues that the ALJ failed to consider Williams's severe headaches and her borderline intellectual functioning, or possible mild mental retardation, and therefore remand is required.[3] Williams alleges that the "decision fails to contain any rationale regarding these impairments, and the impact they would have on her RFC." (Pl.'s Br. at 27-28, ECF No. 8 at 27-28.)

An impairment or combination of impairments is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521; 416.921. Further,

---

[3] The court observes that the record is devoid of any prior argument by Williams, either before the ALJ or in the brief submitted to the Appeals Council, concerning these alleged impairments.

"[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' " SSR 96-8p.

Contrary to Williams's argument, the ALJ specifically mentioned Williams's possible borderline intellectual functioning in formulating her RFC. For example, the ALJ discussed the opinion of a non-examining state agency program psychologist who opined on June 17, 2005 that Williams had borderline intellectual functioning as one of her impairments, and found that Williams had mild limitations in activities of daily living, and moderate limitations in social functioning, concentration, persistence, and pace.[4] (See Tr. 23.) The ALJ also considered this diagnosis in utilizing the Psychiatric Review Technique Form, and reached the same limitations as the state psychologist. (Id.) Further, with regard to both alleged impairments, Williams has failed to demonstrate, or even argue, what additional restrictions these impairments would place on her ability to work or how they would further reduce her RFC. Therefore, even if the ALJ erred in failing to find, or explain why he did not find, these impairments to be severe, Williams has failed to demonstrate that the ALJ's RFC determination is unsupported by substantial evidence.

### 3. Treating Physicians

Finally, Williams argues that the RFC determination is unsupported because it fails to account for the opinion of Williams's treating physician. For the reasons discussed above, Williams has failed to demonstrate that the ALJ's rejection of this opinion was unsupported by substantial evidence or was based on an error of law. Therefore, this argument similarly fails.

---

[4] The majority of the other examiners who included similar diagnoses also found that Williams's RFC would permit her to perform unskilled work. (See Tr. 256, 258-59, 304); (but see Tr. 223) ("Due to her emotional problems, particularly her difficulty managing her temper, as well as limited intellectual capacity, Ms. Williams would probably have difficulty engaging in employment at the present time, [November 4, 2003.]").

**RECOMMENDATION**

For the foregoing reasons, the court finds that Williams has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

November 3, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).